**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **DOCKSIDE ASSOCIATION, INC.,** a South Carolina nonprofit corporation, <br><br> *Plaintiff,* <br><br> v. <br><br> **ARCH SPECIALTY INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, and CUMIS SPECIALTY INSURANCE COMPANY,** <br><br> *Defendants.* | C/A No. 2:26-cv-01132-BHH <br><br><br> **COMPLAINT FOR DECLARATORY JUDGMENT and BREACH OF CONTRACT** |

Plaintiff Dockside Association, Inc. ("Dockside" or "the Association"), by and through its undersigned counsel, for its Complaint against Defendants Arch Specialty Insurance Company ("Arch"), Old Republic Union Insurance Company ("Old Republic"), and CUMIS Specialty Insurance Company ("CUMIS"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment, under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57, and for breach of contract, arising from the Defendants' failure to acknowledge coverage and failure to pay a covered claim under a Commercial Property Policy insuring a condominium building and its townhomes due to direct physical loss to the property.

2.      The Dockside Tower ("Tower"), an eighteen-story reinforced concrete condominium building located at 330 Concord Street, Charleston, South Carolina, was

– 1 –

found by independent structural engineers in February 2025 to have insufficient load capacity to safely support its occupants and their household goods— the result of defective original construction including  concrete slabs and its reinforcing steel that did not comply with the contract documents, including the plans, the specifications or the applicable building codes. Following delivery of the engineers' report, the City of Charleston issued an emergency Order to Vacate the property on February 27, 2025, displacing all residents of the Tower and Dockside Townhomes.

3.      Dockside submitted a claim under the Policy on September 24, 2025. Rather than acknowledging coverage, the Insurers — acting through their third-party administrator, Athens Program Insurance Services, LLC ("Athens") — issued Reservation of Rights letters which effectively contested the bases for all potential claims.

4.      The Insurers' reservation positions are contrary to the Policy's plain language, the facts of record, and controlling South Carolina law. An actual and justiciable controversy of substantial consequence exists between the parties. Dockside seeks a declaration that the Policy affords full coverage for the Tower and Townhomes loss, together with damages for breach of contract.

## **PARTIES**

5.      Plaintiff Dockside Association, Inc. ("HOA") is a South Carolina nonprofit corporation with its principal place of business at 330 Concord Street, Charleston, South Carolina 29401. Plaintiff is the Named Insured under the Policy and is, inter alia, responsible for the administration and insurance of the Dockside condominium complex, including the Tower and the adjoining Townhomes.

6.     The Policy is what is known as a "Subscription Policy," wherein insurers agree to provide coverage for losses thereunder in specific percentages of the risks undertaken. Insurers in these circumstances are known as "Market Insurers."

7.     Defendant Arch Specialty Insurance Company is an insurance company organized under the laws of a state other than South Carolina, with its principal place of business outside South Carolina. Arch subscribed to 70% of the Policy's risk.

8.     Defendant Old Republic Union Insurance Company is an insurance company organized under the laws of a state other than South Carolina, with its principal place of business outside South Carolina. Old Republic subscribed to 15% of the Policy's risk.

9.     Defendant CUMIS Specialty Insurance Company is an insurance company organized under the laws of a state other than South Carolina, with its principal place of business outside South Carolina. CUMIS subscribed to 15% of the Policy's risk.

10.    Arch Specialty Insurance Company, Old Republic Union Insurance Company, and CUMIS Specialty Insurance Company are referred to herein as the "Market Insurers."

11.    Each of the Market Insurers issued the Policy to a South Carolina insured covering property located in South Carolina. Each is therefore present and doing business in South Carolina. All acts alleged herein performed by Athens Program Insurance Services, LLC were performed as authorized third-party administrator for the Market Insurers; such acts are attributed to and binding upon the Market Insurers.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because (a) complete diversity exists between Plaintiff and Defendants, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57. An actual, concrete, and justiciable controversy exists between the parties regarding their respective rights and obligations under the Policy.

14.     Venue is proper in the Charleston Division of this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Charleston County, South Carolina — including the issuance of the Policy covering property here, the total physical loss and damage of the Tower, the City of Charleston's Order to Vacate, and the submission and handling of the insurance claim — and because the insured property is located in Charleston County.

15.     This Court has personal jurisdiction over each Defendant because each Market Insurer conducts, and at all relevant times has conducted, the business of insurance within South Carolina, covering South Carolina properties, and this action arises directly from that conduct. All coverage issues in controversy are governed by South Carolina law pursuant to S.C. Code Ann. § 38-61-10.

**FACTUAL BACKGROUND**

**The Dockside Property and the Association**

16.     The Dockside condominium complex is located at 330 Concord Street, Charleston, South Carolina. The complex includes the Tower — an eighteen-story reinforced concrete condominium building constructed in 1974 — and the Dockside

Townhomes, which are constructed directly upon a one-story raised concrete deck that surrounds the Tower's base.

17. Dockside Association, Inc. is the homeowners' association responsible, inter alia, for the common elements and insurance obligations of the complex. Under the Dockside By-Laws, the Association is required to purchase property insurance covering the buildings and improvements of the complex in an amount equal to the maximum insurable replacement value; additionally, the Association is irrevocably appointed as agent for each co-owner to adjust all claims arising under such insurance by the Bylaws.

**The Policy**

18. The Market Insurers issued Commercial Property Policy No. CH2EC-00439-0 to Dockside Association, Inc. for the policy period March 30, 2024, through March 30, 2025 (the "Policy"). The Policy is attached hereto as **Exhibit A**. The Policy is a subscription policy underwritten by three insurers — Arch (70%), Old Republic (15%), and CUMIS (15%) — pursuant to the Insurer Subscription Endorsement (Policy Form NSM CP 00 26 09 23) [Dockside.Ins.-000007]. Each insurer is severally liable for its respective percentage of any covered loss.

19. The Policy's insuring agreement, set forth in the Condominium Association Coverage Form (Policy Form CP 00 17 10 12, §A) [Dockside.Ins.-000042], provides that the Market Insurers "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Covered Property expressly includes the Dockside Tower and Townhomes.

20.     The Policy covers Causes of Loss on an all-risk ("Special") basis pursuant to the Causes of Loss — Special Form (Policy Form CP 10 30 09 17) [Dockside.Ins.-000032–000041]. Under this form, a "Covered Cause of Loss" means "direct physical loss unless the loss is excluded or limited in this Policy."

21.     While Exclusion "B.2.k" [Dockside Ins.-00035.] excludes "collapse," this exclusion does not apply: (a) "[t]o the extent that coverage is provided under the Additional Coverage, Collapse; or (b) [t]o collapse caused by . . .  [w]eight of people or personal property."

22.     The " Additional Coverage, Collapse" is provided under Policy Form CP 10 30 09 17, §D [Dockside.Ins.-000038–000039] (hereinafter "Additional Coverage") and includes specifically a collapse caused by the use of defective materials and methods of construction occurring after construction caused by the weight of people and personal property such that the building cannot be used for its intended purpose.

23.     However, the policy also attempts to avoid coverage for a building in imminent danger of falling down or caving in if used for its intended purpose but that has not yet collapsed, despite the fact that it not only cannot be used for its intended purpose but to do so would result in the deaths of hundreds of its occupants and people who happened to be in neighboring locations.  §D.3 [Dockside.Ins.-00038]:

24.     The Policy is written on an Agreed Value basis. The Tower and Townhomes are insured at an agreed value of $54,219,605, as stated in the Amount of Insurance Schedule Endorsement (00 CP 0123 00 03 21) [Dockside.Ins.-000100–000101]. No coinsurance penalty applies. Prior to issuing the Policy for this agreed value, the Market Insurers had in their possession an Appraisal prepared. **Exhibit B**.

**The WJE Structural Evaluation**

25.     In early 2025, the Association retained Wiss, Janney, Elstner Associates, Inc. ("WJE"), an independent structural engineering firm, to evaluate the integrity of the Tower's elevated concrete slabs and supporting columns. Ralf Leistikow, P.E., conducted the evaluation.

26.     On February 25, 2025, WJE issued its structural evaluation report (the "WJE Report"), which is attached hereto as **Exhibit C**. The WJE Report focused on the concrete slabs. It found that the as-built concrete slabs were below specified thickness in many locations and that the concrete slabs lacked sufficient flexural steel. As a result, the as-built slabs had "insufficient [load] capacity to continue to be safely occupied" and that temporary shoring is not feasible.

27.     The structural deficiencies — deficient rebar placement and below-specification concrete — constitute defective material and methods in construction and were not discoverable by ordinary inspection; they required destructive core sampling and ground-penetrating radar ("GPR") analysis. These conditions were hidden from the Association prior to the WJE investigation.

28.     WJE identified the failure mode as punching shear failure at slab-column connections — a sudden, brittle failure mode resulting in "pancaking" collapse of each floor onto the next, causing catastrophic structural failure. This is an abrupt, not gradual, failure mechanism.

**The City of Charleston's Order to Vacate**

29.     On February 26, 2025, the Association transmitted the WJE Report to the City of Charleston. Ken Granata, the Chief Building Official, reviewed the WJE Report,

– 7 –

consulted with the Association and WJE, and determined that an emergency Order to Vacate was required. **Exhibit D**.

30.     On February 27, 2025, the Chief Building Official issued a mandatory Order to Vacate requiring that the Tower and the Townhomes be vacated by 5:00 p.m. on February 28, 2025, and remain empty until further notice. The Order was issued under Section 116 of the 2021 South Carolina Building Code and Sections 115 and 116 of the International Existing Building Code, as adopted by the City of Charleston.

31.     The Order was extended to the Townhomes — physically separate buildings — because they are constructed directly upon the raised concrete deck at the Tower's base. This would result in each floor pancaking down, shattering the slab, and endangering the Townhomes and the people in them.

32.     On September 10, 2025, in *Earhart, et al. v. City of Charleston*, No. 2:25-cv-05121-DCN (D.S.C.) — an action by Townhome residents seeking to enjoin the evacuation order — United States District Judge David C. Norton denied the Townhome owners' request for a preliminary injunction seeking the right to remain in their Townhomes and found that the Tower situation is "an emergency scenario involving imminent danger" and that the evacuation order was justified to protect Townhome residents from "the imminent danger of which the structural engineer retained by the plaintiffs' own homeowners association warned." *Earhart*, ECF No. 22 at 10, 14 n.4 (D.S.C. Sept. 10, 2025).

33.     On September 24, 2025, Dockside submitted a completed Notice of Loss under Policy No. CH2EC-00439-0.

34. Despite the foregoing, on October 9, 2025, and again on December 12, 2025, Athens issued its Reservation of Rights letters (**Exhibits E and F**) which assert various reasons Market Insurers would not provide coverage.

35. The application of the Reservation of Rights position applicable here is contrary to the Policy's plain language and controlling South Carolina law.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT

36. Dockside incorporates the preceding paragraphs as if fully set forth herein.

37. Dockside seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 resolving the controversies in its favor.

38. An actual, concrete, and justiciable controversy exists between Dockside and the Market Insurers regarding their respective rights and obligations under the Policy. The Market Insurers have formally reserved the right to deny coverage on several grounds. Dockside contends that full coverage is owed for each aspect of its claim. The controversy is immediate, of substantial magnitude, and ripe for judicial resolution.

39. The Arbitration Endorsement is void; Plaintiff lacked a meaningful choice as to the actual provisions. The arbitration provision requires the application of New York law; such a requirement is unconscionable and is contrary to South Carolina's public policy as set forth in South Carolina Code § 38-61-10. Additionally, the arbitration clause is void as unconscionable as it does not provide for a fair and unbiased arbitration panel. It requires " …the Arbitration Tribunal shall consist of persons employed or "engaged in a senior position in insurance underwriting or claims.

40.    The Tower and Townhomes have suffered "direct physical loss or damage," in that the insured premises has suffered loss of or damage caused by lack of properly constructed concrete slabs and failure to incorporate appropriate steel in said slabs.

41.    The Policy's Additional Coverage — Collapse §D.1 [Dockside.Ins.-000038] defines "abrupt collapse" as "an abrupt falling down or caving in of a building or any part of a building **with the result that the building or part of the building cannot be occupied for its intended purpose.**"

42.    The Tower and the Townhouses cannot be occupied for their intended purpose — residential condominium use. The policy-defined outcome of abrupt collapse is present. The mechanism (punching shear at slab-column connections) is a sudden, brittle fracture event, satisfying the "abrupt" element. Under South Carolina law, any residual ambiguity in the "abrupt collapse" definition must be resolved against the insurer as drafter. *Baber v. Principal Mut. Life Ins. Co.*, 323 S.C. 135, 473 S.E.2d 548 (S.C. Ct. App. 1996).

43.    §D.2.d [Dockside.Ins.-000038–000039] independently provides coverage for "[u]se of defective material or methods in construction" combined with "[w]eight of people or personal property." WJE found that the concrete slabs Demand placed upon the slabs exceed the Capacity Ratio of the slabs at live load levels — the actual weight of the Tower's Weight of people and unit contents, including furniture, cabinetry, bathroom furnishings, kitchen appliances, countertops, possessions

44.    The Market Insurers contend that Dockside failed to provide "prompt notice" as required by Policy Form CP 00 17 10 12, §E.3 [Dockside.Ins.-000051], citing the delay between the February 2025 WJE Report and the September 2025 claim submission.

45.     This Court should declare that notice was not late but if found to be late the Market Insurers cannot demonstrate actual prejudice. South Carolina law requires that an insurer prove actual, demonstrable prejudice before denying a first-party property claim for late notice. *Magnolia N. Prop. Owners' Ass'n v. Heritage Cmty. Ins. Co.*, 375 S.C. 437, 652 S.E.2d 638 (S.C. Ct. App. 2007). No such prejudice exists: the Tower is standing and accessible; the Market Insurers' own inspector (Thornton Tomasetti) has examined it; and the Market Insurers have had access to all material information since June 6, 2025. The delay reflected good-faith internal deliberation; when Dockside decided to proceed, it did so promptly. Furthermore, the Market Insurers are equitably precluded from asserting a notice defense when they have themselves failed to perform their own Policy obligation to supply Dockside with the required proof of loss forms. Policy Form CP 00 17 10 12, §E.3(7) [Dockside.Ins.-000051].

46.     Accordingly, Dockside is entitled to a declaration that: (a) the Policy affords full coverage for the Tower's structural loss under the insuring agreement and/or the Additional Coverage — Collapse; (b) the Market Insurers are obligated to pay Dockside the agreed value of $54,219,605; all applicable additional amounts under said policy; and all other amounts owed, including amounts allowed by South Carolina Code § 38-59-40; and (c) the Market Insurers are obligated to provide all required claim forms and to process and pay the claim without further delay.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

47.     Dockside incorporates the preceding paragraphs as if fully set forth herein.

48.     The Policy is a valid and enforceable contract between Dockside and the Market Insurers. Dockside has performed all conditions precedent, including maintaining the Policy, submitting a Notice of Loss, cooperating with the Market Insurers' inspection, and providing requested documentation.

49.     The Market Insurers have breached their contractual obligations by: (a) failing and refusing to acknowledge coverage for a covered structural loss; (b) failing to investigate and adjust the claim; and (c) asserting coverage defenses contrary to the Policy's plain language and controlling South Carolina law.

50.     As a direct and proximate result of the Market Insurers' breach, Dockside has suffered damages in an amount to be proven at trial, including the full agreed value of the Tower ($54,219,605), applicable Ordinance or Law coverage amounts, loss of use damages, costs of managing displaced residents, amounts recoverable pursuant to South Carolina Code § 38-59-40, and other consequential damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dockside Association, Inc. respectfully requests that this Court:

A.     On Count I, enter a declaration that (a) the Policy issued by Market Insurers affords full coverage for the Tower's structural loss (b) the Market Insurers are obligated to pay Dockside the agreed value of $54,219,605; all applicable additional amounts under said policy; and all other amounts owed, including amounts allowed by South Carolina Code § 38-59-40; and (c) the Market Insurers are obligated to provide all required claim forms and to process and pay the claim without further delay;

B.     On Count II, award compensatory damages in an amount to be proven at trial, including the full insured loss, all consequential damages, and all amounts recoverable pursuant to South Carolina Code § 38-59-40;

C.     Award pre- and post-judgment interest at the lawful rates;

D.     Award costs of suit; and,

E.     Grant such other and further relief as the Court deems just and proper

**MARK C. TANENBAUM, P.A.**

By:     s/Mark C. Tanenbaum
        MARK C. TANENBAUM (Fed Bar # 4017)
        mark@tanenbaumlaw.com
        W. Allison Smith Rogers (Fed Bar # 10610)
        allison@tanenbaumlaw.com
        1156 Bowman Rd., Suite 245
        Mt. Pleasant, S.C. 29464
        Telephone: (843) 577-5100
        Facsimile: (843) 722-4688

**BUNDY MCDONALD, LLC**

By:     s/Walter H. Bundy
        WALTER H. BUNDY, JR. (Fed Bar # 1598)
        walter@bundymcdonald.com
        M. Brent McDonald (Fed Bar # 10536)
        brent@bundymcdonald.com
        1516 Old Trolley Road, 2nd Floor
        Summerville, SC 29485
        Telephone: (843) 843-492-4134
        Facsimile: (843) 712-7318

**ATTORNEYS FOR PLAINTIFF**

March 17, 2026